# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| TINA MARIE BREWER,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 2:17-cv-00297-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Tina Marie Brewer's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's denial of Petitioner's application for Social Security Disability Insurance Benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

On October 29, 2013, Tina Marie Brewer ("Petitioner") filed an application for Disability Insurance Benefits, alleging disability beginning November 15, 2009 (later amended to March 16, 2013). The claim was initially denied on March 28, 2014 and, again, on reconsideration on October 8, 2014. On December 4, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 19, 2016, ALJ Melvin B. Werner held a video hearing in Wichita, Kansas, at which time Petitioner, represented by her then-attorney, John L. Brennan, appeared (from Independence, Kansas) and testified. Impartial vocational expert, Steve L. Benjamin, also appeared and testified at the same January 19, 2016 hearing.

**MEMORANDUM DECISION AND ORDER - 1**

On February 29, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on March 25, 2016 and, on June 12, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action (through her current attorney, Mark B. Jones), arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 1 (Docket No. 1). Petitioner identifies the "issues" here as a combination of: (1) whether the ALJ properly evaluated her mental impairments; (2) whether the ALJ included Petitioner's credible limitations into the hypothetical residual functional capacity posed to the vocational expert; and (3) whether the ALJ properly developed the record. *See generally* Pet.'s Brief, pp. 3-7 (Docket No. 15). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at pp. 4-5, 7; *see also* Pet. for Review, p. 2 (Docket No. 1).

## II. **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

**MEMORANDUM DECISION AND ORDER - 2**

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "did not engage in substantial gainful activity during the period from her amended alleged onset date of March 16, 2013 through her date last insured of March 31, 2014." (AR 22).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe"

**MEMORANDUM DECISION AND ORDER - 4**

when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "[h]istory of knee injury in remote past (ACL tear) with surgery two times, and residual osteoarthritis, and affective disorders." (AR 22).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 23-24).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565,

416.960(b), 416.965. Here, the ALJ determined that Petitioner has the RFC to "perform light" work pursuant to 20 C.F.R. § 404.1567(b), except she "needs to alternate from sit to stand"; she "can sit continuously for 60 minutes and stand continuously for 30 minutes"; she "cannot be exposed to concentrated hot and cold temperatures, vibrations, hazards, unprotected heights, or moving machinery"; and she "can perform simple routine work involving only 1 to 2 steps, and involving simple work place decisions." (AR 24-28).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner was unable to perform any past relevant work, but found that jobs exist in significant numbers in the national economy that Petitioner can perform, including "assembler electrical accessories," "marker," "production solderer," "polisher," and "order clerk/food beverage." *See* (AR 28-30). Therefore, based on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from [March 16, 2013], the alleged onset date, through March 31, 2015, the date last insured." (AR 30) (internal citation omitted).

### III. DISCUSSION

At the outset, Petitioner does not challenge the ALJ's evaluation of her physical impairments (knee injury and accompanying residual osteoarthritis); instead, she takes issue solely with the ALJ's evaluation of her mental impairment (characterized by the ALJ as

**MEMORANDUM DECISION AND ORDER - 6**

"affective disorders"). *See generally* Pet.'s Brief, pp. 3-7 (Docket No. 15). Specifically, Petitioner argues that "[t]he ALJ never told the vocational expert [she] had moderate difficulties with concentration, persistence or pace," and that, in turn, "[t]he ALJ committed reversible error in relying on a [vocational expert's] response to a hypothetical question which did not include all the functional limitations determined by the same ALJ." *Id*. at pp. 3-4.

On this point, during the January 19, 2016 hearing, the ALJ and the vocational expert had the following exchange:

> ALJ: Okay. I would like you to consider a person of claimant's age with her education and work experience and the medical record and remarkable for the history of the torn meniscus tear with the two surgeries and the relatively distant past. Also, obesity as a complicating factor *and described mental or emotional* and I'd like you to assume that on reviewing the record, I conclude it's contrary to the lower levels rating that the individual considering had the capacity to lift on an occasional basis articles of 20 pounds on an occasional basis and 10 on a frequent basis being the most that could be lifted with occasional . . . climbing ramps and stairs, no ladders, ropes or scaffolds, no concentrated cold or hot temperatures; exposure to concentrated or frequent intense vibration or hazardous environments, that would be those that are unprotected heights or exposed moving machinery; and with those as stipulated limitations, would that allow the performance of a prior job or prior jobs that the claimant did?
>
> VOC: No, the machine operator and hand packager job are considered medium work and would be in excess of a light RFC. The fund raiser job is a light job, but it's going to be – you know, they're outdoors, so they're going to be in more than concentrated cold because it's done in the winter.
>
> ALJ: Okay. Well, you said that the hand packager was light as it was performed, though, would there be –
>
> VOC: Right, I was just about ready to say that, as the hand packager was described in the record, it was described as a light position, it should be able to be performed within this hypothetical question.
>
> ALJ: Okay. If an individual had as it was proposed at least when she originally initiated – was originally set – underwent treatment to need the opportunity to alternate between sitting and standing, assume the static position was consistent with sitting only sufficient to travel from Cedar Vale to Independence say an hour or less, assume standing tolerated for 30 minutes, would that allow performance of that hand packager?

**MEMORANDUM DECISION AND ORDER - 7**

> VOC: No, those positions are going to be on their feet at least six hours of the shift.
>
> ALJ: Okay. And just a moment here – would there be other occupations in your opinion that would remain?
>
> VOC: There are other unskilled occupations that remain for this hypothetical, yes.
>
> ALJ: And what would be representative in your opinion?
>
> VOC: One example of a light job is an assembler, electrical accessories, the SVP is level 2, the DOT Code is 729.687-010, in the State of Kansas, there are 1,750 –
>
> ALJ: I only need national . . . .
>
> VOC: In the nation, there are 207,330; another example of light work is a marker, the SVP is level 2, the DOT Code is 209.587-034, in the nation, there are 1,878,860; another example of light work is a production solderer, the SVP is level 2, the DOT Code is 813.684-022, and in the nation, there are 369,610.
>
> ALJ: Light by definition includes sedentary, are there some that would also fit within this at that lower level of exertion?
>
> VOC: There are, an example of sedentary work is a polisher, the SVP is level 2, the DOT Code is 713.687-038, in the nation, there is 70,130; another example of sedentary work is an order clerk, food and beverage, the SVP is level 2, the DOT Code is 209.567-014, in the nation there are 190,390.
>
> ALJ: *The individual given the indications of there being an emotional component had essentially a capacity for what we would call simple, routine, repetitive tasks in the context of work that involve only simple work-related decisions relatively few work place changes, would that allow the performance of these jobs you've cited?*
>
> VOC: It would, they're all considered unskilled work and would be simple, routine, repetitive in nature.

(AR 54-57) (emphasis added).

In short, Petitioner argues that the ALJ's hypothetical questions to the vocational expert insufficiently encapsulated Petitioner's mental condition insofar as they did not address "moderate difficulties" with concentration, persistence, or pace. *See* Pet.'s Brief, p. 4 (Docket No. 15) ("In this case, the ALJ found that the Petitioner had moderate difficulties with

**MEMORANDUM DECISION AND ORDER - 8**

concentration, persistence, or pace. Despite having made this finding, the ALJ never asked the VE what effect having a moderate limitation in her ability to concentrate, persist, or maintain pace would have on her ability to work.") (citing (AR 23) (ALJ concluding: "With regard to concentration, persistence, or pace, the claimant had moderate difficulties.")). Petitioner goes on to argue that these incomplete hypotheticals rendered the vocational expert's subsequent testimony similarly incomplete, thus warranting remand – essentially a "garbage in, garbage out" proposition. *See id.* ("Because the ALJ did not tell the vocational expert that the Petitioner had moderate limitations in her ability to concentrate, persist, or maintain pace, he committed reversible error and the matter should be immediately remanded back to the ALJ.").

Respondent counters by insisting that the ALJ appropriately considered Petitioner's moderate difficulties with concentration, persistence, or pace when he presented a series of hypotheticals to the vocational expert taking into account Petitioner's RFC – namely, Petitioner' ability to perform simple, routine, and repetitive tasks. *See* Resp't Brief, pp. 9-10 (Docket No. 16) ("[Petitioner's] argument misses the mark because the ALJ in this case translated Petitioner's moderate difficulty maintaining concentration, persistence, or pace into a concrete limitation by formulating a vocational hypothetical that restricted the hypothetical individual to 'simple, routine work involving only 1 or 2 steps, and involving simple work place decisions.'") (citing (AR 24, 56-57)). In essence, Respondent argues that the ALJ's reference within a hypothetical to an individual having an "emotional component" reflecting "a capacity for . . . simple, routine, repetitive tasks in the context of work that involve[s] only simple work-related decisions [with] relatively few work[-]place changes," necessarily aligned with Petitioner's RFC, while simultaneously capturing her moderate difficulties with concentration, persistence, or pace – they are, for all intents and purposes, one and the same. *See id.* at p. 10 ("This is significant because Ninth Circuit case law establishes that a limitation to simple tasks adequately captures moderate

**MEMORANDUM DECISION AND ORDER - 9**

deficiencies in the area of concentration, persistence, and pace.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008)).

On review here, the Court begins with the proposition that "whether language in an RFC limiting a claimant to simple, repetitive, or routine tasks adequately addresses a medical finding of deficits in concentration, persistence, and pace is a nuanced analysis in the Ninth Circuit." *Ruth v. Berryhill*, 2017 WL 4855400, at *11) (D. Or. 2017) (*comparing Stubbs-Danielson*, 539 F.3d 1169, *with Brink v. Comm'r of the Soc. Sec. Admin*. 343 F. App'x 211 (9th Cir. 2009)). In *Stubbs-Danielson* (relied upon by Respondent), the claimant's physician identified her as having "slow pace, both in thinking [and] actions," but nonetheless opined that claimant was still able to "carry-out simple tasks." *Stubbs-Danielson*, 539 F.3d at 1173. In turn, the ALJ "translated" the physician's conclusions regarding the claimant's pace and mental limitations into her RFC by limiting her to "simple tasks." *Id*. at 1174. In affirming the district court's denial of the claimant's application for disability benefits, the Ninth Circuit emphasized that, in "translating" the physician's conclusions, the ALJ relied on "the only concrete restriction" available to him: the limitation to "simple tasks." *Id*. The court held that the ALJ's assessment as to the claimant's concentration, persistence, and pace was adequately incorporated into her RFC because the "assessment [was] consistent with restrictions identified in the medical testimony." *Id*. (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (where ALJ's hypothetical incorporated concrete

restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace)).

Later, in *Brink*, an ALJ accepted medical evidence that the claimant had moderate restrictions as to concentration, persistence, and pace, but did not include those specific limitations in her hypothetical to the vocational expert. *See Brink*, 343 F. App'x at 212. Instead, the ALJ's hypothetical referenced only a restriction to "simple, repetitive work." *Id*. On appeal, the Ninth Circuit found that this restriction did not adequately capture the claimant's limitations because the "repetitive, assembly-line work" addressed by the vocational expert still might require "extensive focus and speed." *Id*. In rejecting the Commissioner's argument premised on *Stubbs-Danielson* and remanding the action, the court noted that, unlike *Stubbs-Danielson*, the medical evidence established the claimant's moderate difficulties with regard to concentration, persistence, or pace and, thus, the hypothetical presented to the vocational expert should have included not only simple, repetitive work, *but also* the claimant's moderate limitations in concentration, persistence, or pace. *See id*. ("In *Stubbs-Danielson* . . ., we held that an 'assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony.' *The medical testimony in Stubbs-Danielson, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that [the claimant] does have difficulties with concentration, persistence, or pace. Stubbs-Danielson, therefore, is inapposite*.") (emphasis added, internal citations omitted).

This case is more akin to *Brink* than *Stubbs-Danielson*. Here, as in *Brink*, Petitioner's concentration, persistence, or pace is moderately impaired – the ALJ himself concluded as much

**MEMORANDUM DECISION AND ORDER - 11**

at the third step of the sequential process. *See* (AR 23). And yet, also like *Brink*, the ALJ determined that Petitioner's only mental limitation was to jobs involving "simple, routine work involving only 1 to 2 steps, and involving simple work place decisions" – and failed to include moderate limitations in maintaining concentration, persistence, or pace in (1) Petitioner's RFC and, likewise, (2) the hypotheticals presented to the vocational expert. *See* (AR 24, 54-57). At bottom, moderate restrictions with concentration, persistence, or pace should not be conflated within an ability to perform simple, routine work tasks, as Respondent's argument implies. While possible, it is not mandatory, and the record as framed by the parties' briefing does not compel such a result. This reality distinguishes this action from *Squibb-Danielson*.

Therefore, the ALJ's conclusion at step five of the sequential process (naturally informed by the vocational expert's testimony) is not supported by substantial evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886 (9thCir. 2006) (in posing hypothetical to vocational expert, "an ALJ is not free to disregard properly supported limitations"). The action is therefore remanded to the Commissioner so that the ALJ can clarify his hypotheticals to the vocational expert and determine whether Petitioner is able to perform gainful employment in the national economy. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances is to remand to the agency for additional investigation or explanation") (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 12**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *See Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ.  *See Key*, 754 F.2d at 1549.

However, here, the reasons given by the ALJ for determining that Petitioner is not disabled and/or that there were jobs that existed in significant numbers in the national economy that Petitioner could have performed are not properly supported; the case is therefore remanded for this reason.  The ALJ shall clarify his hypotheticals to the vocational expert and determine whether Petitioner is able to perform gainful employment in the national economy.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: August 27, 2018

_____
Ronald E. Bush
Chief U.S. Magistrate Judge